Timothy B. Anderson (#112)
Ryan C. Cadwallader (#13661)
Zachary C. Lindley (#17261)
KIRTON MCCONKIE
301 N. 200 E. Suite 3A
St. George, Utah 84770
Telephone: (435) 574-5672
Fax: (385) 501-4989
tanderson@kmclaw.com
rcadwallader@kmclaw.com
zlindley@kmclaw.com
*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| GREEN ROCK HEMP HOLDINGS, LLC, a Nevada Limited Liability Company; GREEN ROCK FARMS, LLC, a Delaware Limited Liability Company; and RED MESA SCIENCE & REFINING, LLC, a Nevada Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> CAPNA FABRICATION, a California Corporation, aka CAPNA SYSTEM, aka CAPNA, INC., <br><br> Defendant. | Civil No. 4:21-cv-00033-DN <br><br> **COMPLAINT** <br><br> District Judge David Nuffer |

Plaintiffs, Green Rock Hemp Holdings, LLC, Green Rock Farms, LLC and Red Mesa

Science and Refining, LLC (collectively "Plaintiffs"), through the offices of Kirton McConkie,

for their Complaint against Defendant, Capna Fabrication ("Defendant" or "Capna"), avers as

follows:

4824-4305-4305.v4

**PARTIES, JURISDICTION AND TIER DESIGNATION**

1.      Plaintiff, Green Rock Hemp Holdings, LLC ("Green Rock Hemp"), is a Nevada Limited Liability Company with its principal place of business in Utah.

2.      Plaintiff, Green Rock Farms, LLC, is a Delaware Limited Liability Company with its principal place of business in Utah.

3.      Plaintiff, Red Mesa Science & Refining, LLC, is a Nevada Limited Liability Company with its principal place of business in Utah.

4.      Upon information and belief, Defendant, Capna Fabrication, is a foreign corporation organized under the laws of California.

5.      Jurisdiction over the subject matter of this action is based on diversity and is proper and is predicated upon 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      Venue is proper and is predicated upon 28 U.S.C. § 1391(a) and (b).

**GENERAL ALLEGATIONS**

7.      Plaintiffs are involved in the commercial development, production, and sale of hemp-derived products, including high quality cannabidiol (CBD), isolate, and distillate (herein referred to as "Hemp-Derived Products").

8.      Plaintiffs' operation, relevant to this underlying action, is located in Washington County, Utah, wherein Plaintiffs lease their facility from a third-party landlord ("Leasehold Interest").

9.      As part of their Leasehold Interest, Plaintiffs must not allow the leased property to be encumbered by any means.

2

4824-4305-4305.v4

10.     Plaintiffs, in order to accommodate their operation, have expended considerable resources to the build-out of their leased property, including also working closely and frequently with local government for proper permitting.

11.     Relevant to the underlying action, Plaintiffs specialize in two specific areas within the industry of Hemp-Derived Products: extraction and distillation.

12.     As part of the extraction and distillation processes, Plaintiffs require machinery and equipment specifically designed and installed to produce sufficient output and high-quality results that Plaintiffs may meet rigorous industry standards and customer expectations.

13.     Without both an extraction system and a distillation system, working together, Plaintiffs are unable to produce the variety and quantity of strategic products that are critical to its business purpose.

14.     Upon information and belief, Capna is a research and manufacturing company specializing in the sale, manufacture, and installation of extraction and distillation equipment for various industries, and specifically, for the Hemp-Derived Product industry in which Plaintiffs practice.

15.     In August 2019, Plaintiffs and Defendant entered into an agreement for the sale and installation of certain machinery and equipment for purposes of extraction and distillation for Hemp-Derived Products ("Agreement").

16.     Specifically, Plaintiffs agreed to purchase from Defendant the following machinery and equipment related to extraction: (1) Atles V2 Ethanol Extraction Unit (2 units); (2) Ares V2 Falling Film Evaporator (6 units); (3) CERES-50L Centrifuge (2 units); and (4) CS200 Air Cooled Chiller (4 units) (collectively referred to herein as "Extraction System").

3

17.     Plaintiffs agreed to purchase from Defendant the following machinery and
equipment related to distillation: Zeus, three-stage distillation (1 unit) ("Distillation System" or
"Zeus").

18.     The total cost of the Extraction System amounted to $1,732,000.00.

19.     Plaintiffs paid $1,732,000.00 to Capna between September 2019 and January
2020, in full satisfaction of the total amount owed for the Extraction System.

20.     The total cost of the Distillation System amounted to $865,028.00.

21.     Plaintiffs paid $865,028.00 to Capna between November 2019 and February
2020, in full satisfaction of the total amount owed for the Distillation System.

22.     Together, the Extraction System and Distillation System were to function together
in Plaintiffs' production of Hemp-Derived Products, and it was understood and agreed by
Plaintiffs and Capna that planned production outputs and quantities could not be achieved unless
both the Extraction System and Distillation System were installed and fully operational at the
capacity agreed upon by the parties.

23.     Capna expressly agreed to a 1-year warranty period on all parts and labor for the
benefit of Plaintiffs.

24.     At the time Plaintiffs agreed with Capna to purchase the Extraction System and
Distillation System, Capna was aware that the Extraction System and Distillation System were
required by Plaintiffs to complete the systems to produce the necessary output and quality
required for Plaintiffs' Hemp-Derived Products.

25.     In relying on Capna's skill, judgment and representations, Plaintiffs purchased the
specific Extraction System and Distillation System from Capna to support Plaintiffs' production

4824-4305-4305.v4

of Hemp-Derived Products and to achieve Plaintiffs' desired outputs.

26.     As part of the Agreement with Plaintiffs to purchase the Extraction System and Distillation System, Capna agreed to ship and install the Extraction System and Distillation System.

27.     As part of the Agreement with Plaintiffs, Capna agreed to provide training on the Extraction System and Distillation System to Plaintiffs' employees and agents at Plaintiffs' facility.

28.     At all relevant times herein, Plaintiffs and Capna agreed that March 2020 was the expected date for the Extraction System and Distillation System to be fully installed and operational at Plaintiffs' facility, at the agreed upon capacity and output, with Plaintiffs' workforce being fully trained thereon by that time as well.

29.     Capna began work on the Extraction System in or around August 2019, and shortly thereafter, in or around November 2019, concurrently began work on the Distillation System.

30.     During the installation process of both the Extraction System and the Distillation System, Capna frequently altered its installation plans, delayed site visit and work dates, and ultimately failed to install the two systems by the agreed upon deadline of March 2020.

31.     At all relevant times herein, Plaintiffs did not impede Capna's ability to satisfy its obligations pursuant to the parties' Agreement as to the Extraction System and Distillation System and made its facility and workforce available for Capna to accomplish its work.

32.     In or around June 2020, due to Capna's frequent and consistent delays in installing the Extraction System and Distillation System, and without either system being yet

4824-4305-4305.v4

installed and operational, Capna contracted with a third-party company, Freedom Process Piping, Inc. ("Freedom") to assist in the completion of the plumbing on the two systems.

33.     Despite assisting with both systems, Freedom worked primarily on the plumbing for the Distillation System.

34.     By around October 2020, and mostly due to the services provided by Freedom, the Extraction System was finally installed—nearly seven (7) months after the agreed upon deadline of March 2020—and partly operational.

35.     Although installed and partly operational by October 2020, the Extraction System still did not function properly and was not reaching the capacity and output represented and agreed to by Capna, frequently exhibiting mechanical issues.

36.     By this time, around October 2020, Plaintiffs had lost nearly seven (7) months of planned and expected profits that should have been realized had the Extraction System and Distillation System been installed and operational in March 2020, as agreed by Capna.

37.     Notwithstanding the Extraction System being installed and partly operational by around October 2020, the Distillation System remained uninstalled and non-operational, and therefore, Plaintiffs were still unable to begin commercial production at their facility.

38.     At no time during the installation process for the Distillation System was the system operational or installed, and in fact, it frequently exhibited mechanical issues that Capna would not or could not resolve.

39.     As a result of Capna's continued failure to install and make operational the Distillation System, Plaintiffs were required to employ the services of third-party contractors to assist in trying to complete the work on the Distillation System and expended considerable

4824-4305-4305.v4

resources in doing so.

40.     In or around October 2020, and due to Capna's failure to pay invoices, Freedom halted work on the Distillation System, and on November 6, 2020, Freedom filed a Preliminary Notice of Construction Lien with the State Construction Registry.

41.     In or around October 2020, and due to the frequent mechanical issues exhibited by the Distillation System throughout the installation process, Plaintiffs retained the services of a third-party consulting company, SPD Systems Corporation ("SPD"), to conduct a review on the adequacy and functionality of the Distillation System.

42.     In their report, dated November 13, 2020, SPD expressly found multiple short comings of the Distillation System and ultimately determined that it was likely intended for other industries, like Oil & Gas or Nutraceuticals, and was not able to perform vacuum distillation for hemp-derived products, as was required by Plaintiffs and of which Capna was aware.

43.     Specifically, SPD found that the sizing and design of the Distillation System were inadequate.

44.     As a solution, SPD presented options which were essentially, (1) reconfigure the current Distillation System without the benefit of any protection warranty, or (2) replace the Distillation System completely while providing a 1–3-year warranty.  The options ranged in price from $625,000.00 to $760,000.00, with an 8 to 16-week time frame for installation.

45.     Upon receipt of the report from SPD, Plaintiffs notified Capna of the findings, including that the Distillation System was inadequately sized and designed.

46.     Capna did not agree with the findings of the SPD report, but at no relevant time herein did Capna offer to replace the Distillation System, accept it as a return, compensate

7

Plaintiffs for lost production or expenses, or return to Plaintiffs the purchase price of the Distillation System already paid in full by Plaintiffs as of February 2020.

47.     In or around December 2020, following the report by SPD and due to Capna's continued failure to install and make operational the Distillation System, Plaintiffs purchased a separate distillation machine so that they could begin commercial production (hereinafter referred to as, "Alternative Distillation System").

48.     The Alternative Distillation System was purchased by Plaintiffs at an expense of approximately $350,000 to mitigate ongoing losses caused by Capna's failures.

49.     The Alternative Distillation System, though functional to complete distillation of Plaintiffs' Hemp-Derived Products, produces at a reduced capacity, accomplishing approximately 25% of the output desired, designed, and promised by Capna for Capna's delivered Distillation System.

50.     Given the output and production of the Alternative Distillation System, and in order to realize close to the same amount of production as promised by Capna in the original Distillation System, Plaintiffs will be required to purchase additional distillation machines for roughly a similar price of $350,000 per machine.

51.     On or around December 17, 2020, Plaintiffs sent a letter to Capna informing Capna of Plaintiffs' intentions to file a lawsuit based on Capna's failing to install and make fully operational, at the agreed upon capacity and output, both the Extraction System and Distillation System ("December 2020 Letter").

52.     More specifically, in the December 2020 Letter, Plaintiffs demanded that Capna (1) immediately pay Freedom for services rendered; (2) install and commission the remaining

4824-4305-4305.v4

systems in an expedited manner to limit the ongoing damages of Plaintiffs; and (3) immediately

identify and establish, in writing, a detailed completion plan with an expedited timeline for

installation and commissioning.

53.     Despite Plaintiffs' reasonable requests in the December 2020 Letter, Capna failed

to provide Plaintiffs with assurances that it would perform as agreed by the parties, and as

demanded by Plaintiffs, and continued to delay communications which caused Plaintiffs more

harm due to their inability to commence commercial production.

54.     The Capna Distillation System remains on-site at Plaintiffs' facility in a non-

operational and uninstalled state, while the Extraction System only recently—as of February

2021—became fully operational after continued efforts and expended resources by Plaintiffs.

55.     On March 23, 2021, Plaintiffs sent a letter to Capna in which they formally

revoked acceptance of the Distillation System and demanded immediate reimbursement for the

full purchase price of the Distillation System.

56.     Since March 2019, it is estimated that Plaintiffs have lost and/or expended more

than $10,000,000.00 as a direct result of Capna's conduct and breaches as herein set forth and as

a result of the unsuitable goods sold to Plaintiffs by Capna.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

57.     Plaintiffs reassert all other allegations made in this Complaint and incorporates

them herein as if set forth in full.

58.     Plaintiffs and Capna entered into an Agreement for the sale, purchase and

installation of the Extraction System and Distillation System.

9

59.     Plaintiffs and Capna agreed that Capna would deliver and install the Extraction System and Distillation System at Plaintiffs' facility in Washington County, Utah, and that the Extraction System and Distillation System would be fully operational and producing at the agreed upon capacity and output by March 2020.

60.     Plaintiffs paid Capna in full for both the Extraction System and the Distillation System by February 2020.

61.     At all relevant times herein, Plaintiffs made their facility and workforce available to Capna for Capna to accomplish and satisfy its obligations under the Agreement.

62.      Capna breached the Agreement between it and Plaintiffs by, but not limited to, failing to complete work on the Extraction System and Distillation System by March 2020, delivering nonconforming goods to Plaintiffs with such nonconformity being unknown to Plaintiffs at the time of delivery, failing to properly install the Extraction System and Distillation System and frequently altering installation plans, frequently delaying work, failing to replace the Distillation System or accept it as a return, failing to compensate Plaintiffs for lost production or expenses incurred as a result of delays, and failing to refund to Plaintiffs the purchase price of the Distillation System already paid in full by Plaintiffs as of February 2020.

63.     Accordingly, Plaintiffs have been injured as a direct and proximate result of Capna's breach of contract and are entitled to damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)

64.     Plaintiffs reassert all other allegations made in this Complaint and incorporates them herein as if set forth in full.

65.     Plaintiffs and Capna entered into an Agreement for the sale, purchase and installation of the Extraction System and Distillation System.

66.     Inherent in the Agreement between Plaintiffs and Capna is an implied covenant of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties, and not to impair the rights of other parties to receive the rights, benefits and reasonable expectations under the Agreement.

67.     Capna breached the implied covenant of good faith and fair dealing by not completing the installation of the Extraction System and Distillation System by March 2020, failing to properly install the Extraction System and Distillation System, frequently delaying work, frequently altering installation plans, failing to replace the Distillation System or accept it as a return, failing to compensate Plaintiffs for lost production or expenses, and failing to return to Plaintiffs the purchase price of the Distillation System already paid in full by Plaintiffs as of February 2020.

68.     Plaintiffs met all, or substantially all of their contractual obligations, including paying all amounts due for the Extraction System and Distillation System and making their facility and workforce available to Capna.

69.     Capna's failure to act in good faith in foregoing manner denied Plaintiffs the full benefit of their bargain and prevented them from realizing the fruits of the Agreement.

70.     Accordingly, Plaintiffs have been injured as a direct and proximate result of Capna's breach of the covenant of good faith and fair dealing and are entitled to damages in an amount to be proven at trial.

11

## THIRD CAUSE OF ACTION
### (Unjust Enrichment—Quantum Meruit and/or Quasi Contract)

71.     Plaintiffs reassert all other allegations made in this Complaint and incorporates them herein as if set forth in full.

72.     Plaintiffs and Capna entered into an Agreement for the sale, purchase and installation of the Extraction System and Distillation System.

73.     Plaintiffs and Capna agreed that Capna would deliver and install the Extraction System and Distillation System at Plaintiffs' facility in Washington County, Utah, and that the Extraction System and Distillation System would be fully operational and producing, at the capacity and output agreed upon, by March 2020.

74.     By February 2020, Plaintiffs had paid in full for both the Extraction System and the Distillation System.

75.     Capna received and accepted payment from Plaintiffs.

76.     Capna had actual knowledge, received, and appreciated this benefit.

77.     Capna failed to install and make operational the Extraction System and Distillation System as agreed upon by the parties but has retained the benefit of the Agreement by retaining the payments made by Plaintiffs.

78.     Having provided nothing in return, it is inequitable and unjust, whether as quantum meruit or quasi contract for Capna to retain any of this benefit without repayment of its value.

79.     Accordingly, Plaintiffs have been injured as a direct and proximate result of Capna's unjust enrichment and are entitled to damages in an amount to be proven at trial.

4824-4305-4305.v4

## THIRD CAUSE OF ACTION
### (Breach of Warranty)

80.     Plaintiffs reassert all other allegations made in this Complaint and incorporates them herein as if set forth in full.

81.     Plaintiffs and Capna entered into an Agreement for the sale, purchase and installation of the Extraction System and Distillation System.

82.     By February 2020, Plaintiffs had paid in full for both the Extraction System and the Distillation System.

83.     Capna expressly agreed to a warranty of 1-year for parts and labor.

84.     Capna breached the express warranty by failing to properly address and resolve the mechanical issues with the Extraction System to allow the Extraction System to achieve the agreed upon capacity and output, failing to address and resolve the mechanical issues with the Distillation System to allow the Distillation System to achieve the agreed upon capacity and output, failing to replace the Distillation System or accept it as a return, failing to compensate Plaintiffs for lost production or expenses, including the costs Plaintiffs incurred from hiring third-party contractors to assist in trying to complete the installation and hiring a third-party consultant to inspect the Distillation System, and failing to return to Plaintiffs the purchase price of the Distillation System already paid in full by Plaintiffs as of February 2020.

85.     Accordingly, Plaintiffs have been injured as a direct and proximate result of Capna's unjust enrichment and are entitled to damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty of Fitness for a Particular Purpose)

86.     Plaintiffs reassert all other allegations made in this Complaint and incorporates

4824-4305-4305.v4

them herein as if set forth in full.

87.     Plaintiffs and Capna entered into an Agreement for the sale, purchase and installation of the Extraction System and Distillation System.

88.     By February 2020, Plaintiffs had paid in full for both the Extraction System and the Distillation System.

89.     At the time Plaintiffs agreed with Capna to purchase the Extraction System and Distillation System, Capna knew or should have known the particular purpose for which the Extraction System and Distillation System were required.

90.     Plaintiffs, in selecting and purchasing the Extraction System and Distillation System, relied on Capna's skill, judgment and representations, and Capna knew or had reason to know that Plaintiffs were relying on its skill, judgment and representations in regards to the two systems being suitable to realize Plaintiffs' production of Hemp-Derived Products and reach Plaintiffs' desired output.

91.     Plaintiffs justifiably relied on Capna's skill, judgment and representations.

92.     The Extraction System and Distillation System were not suitable for the particular purpose intended by Plaintiffs and known to Capna.

93.     Accordingly, Plaintiffs have been injured as a direct and proximate result of Capna's breach of the implied warranty of fitness for a particular purpose and are entitled to damages in an amount to be proven at trial.

<b>FIFTH CAUSE OF ACTION</b><br><b>(Anticipatory Repudiation (Breach))</b>

94.     Plaintiffs reassert all other allegations made in this Complaint and incorporates

14

4824-4305-4305.v4

them herein as if set forth in full.

95.     Plaintiffs and Capna entered into an Agreement for the sale, purchase and installation of the Extraction System and Distillation System.

96.     By February 2020, Plaintiffs had paid in full for both the Extraction System and the Distillation System.

97.     Capna, through its conduct and communication with Plaintiffs, including but not limited to, frequently delaying work, frequently altering installation plans, failing to replace the Distillation System or accept it as a return, failing to compensate Plaintiffs for lost production or expenses resulting from delay in work and unsuitable goods, refusing to consider and address the issues in the report submitted by SPD, failing to address the reasonable requests in the December 2020 Letter and delaying communications, and failing to return to Plaintiffs the purchase price of the Distillation System already paid in full by Plaintiffs as of February 2020, anticipatorily repudiated the Agreement between it and Plaintiffs.

98.     Capna's repudiation substantially impaired the value of the Agreement between it and Plaintiffs.

99.     Accordingly, Plaintiffs have been injured as a direct and proximate result of Capna's anticipatory breach and are entitled to damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment)

100.     Plaintiffs reassert all other allegations made in this Complaint and incorporates them herein as if set forth in full.

101.     A dispute exists between Plaintiffs and Capna regarding the Distillation System.

4824-4305-4305.v4

102.     Through the March 23, 2021 letter, Plaintiffs formally, rightfully, and justifiably revoked acceptance of the Distillation System.

103.     Pursuant to U.C.A. § 70A-2-711, Plaintiffs possess a security interest in the Distillation System in their possession.

104.     Accordingly, Plaintiffs respectfully request the Court enter a declaratory judgment in favor of Plaintiffs and against Defendant, declaring that Plaintiffs possess a security interest in the Distillation System in their possession and control, and may therefore hold, resell or exercise any other right as granted to a security interest holder and allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A.     For general damages resulting from all of Defendant's actions alleged herein, in an amount to be proven at trial;

B.     For any and all consequential and incidental damages resulting from all of Defendant's actions alleged herein, in an amount to be proven at trial;

C.     For any and all pre or post-judgment interest resulting from all of the Defendant's actions as provided by contract or law;

D.     For declaratory judgment in favor of Plaintiffs and against Defendant as herein alleged;

E.     For all costs of suit incurred, including reasonable attorney fees; and

F.     For such other and further relief as this Court deems just and equitable under the circumstances.

4824-4305-4305.v4

DATED this 23rd day of March, 2021.

KIRTON MCCONKIE

*/s/ Timothy B. Anderson*
Timothy B. Anderson
*Attorneys for Plaintiffs*

Plaintiffs' address:
c/o Kirton McConkie
301 N. 200 E. Suite 3A
St. George, Utah 84770
435-574-5672

17

4824-4305-4305.v4